### D. L. THOMPSON V. C. C. BENNER.

[FILED OCTOBER 14, 1891.]

**Instructions** set out in the opinion, *held*, not applicable to the testimony and an erroneous statement of the law.

ERROR to the district court for Richardson county. Tried below before APPELGET, J.

*J. D. Gilman*, and *Isham Reavis*, for plaintiff in error, cited: *Bonns v. Carter*, 20 Neb., 566; *Wellington v. Wentworth*, 8 Mct. [Mass.], 548; 1 Addison, Torts, 497; *St. John v. O'Connell*, 7 Port. [Ala.], 466; *Yale v. Saunders*, 16 Vt., 243; *Perry v. Corby*, 21 Fed. Rep. [Mo.], 737; *Winner v. Hoyt*, 28 N. W. Rep. [Wis.], 380; *Brown v. Work*, 30 Neb., 800.

*E. W. Thomas*, and *C. Gillespie*, contra, cited: *Miller v. Finn*, 1 Neb., 288; *Clark v. Tennant*, 5 Id., 557; *Ahlman v. Meyer*, 19 Id., 66; *West. Ins. Co. v. Putnam*, 20 Id., 334; *Brown v. Hurst*, 3 Id., 356; *Seymour v. Street*, 5 Id., 89; *Blackburn v. Ostrander*, Id., 219; *Converse v. Meyer*, 14 Id., 191; *Everett v. Hobleman*, 15 Id., 376; *McCormick v. Loughran*, 16 Id., 89; *Durrell v. Hart*, 25 Id., 610; Maxwell, Just. Prac. [5th Ed.], 603; *Faulkner v. Meyer*, 6 Neb., 414; *Taylor v. Ryan*, 15 Id., 579; *Nelson v. Garey*, Id., 535; *Fletcher v. Daugherty*, 13 Id., 224; *Langdon v. Buel*, 9 Wend. [N. Y.], 80; *Brown v. Phillips*, 3 Bush [Ky.], 656; *Hopkins v. Thompson*, 2 Port. [Ala.], 433; *Holmes v. Sprowl*, 31 Me., 73; *Pratt v. Harlow*, 16 Gray [Mass.], 379; *Worthington v. Hanna*, 23 Mich., 530; *Peckinbaugh v. Quillin*, 12 Neb., 586; *Hamilton v. Lau*, 24 Id., 59; *Bonns v. Carter*, 20 Id., 566.

16

MAXWELL, J.

In February, 1888, one Clinton F. Benner, a minor, bought a small confectionery and cigar store in Falls City, for which he paid about $450 with money furnished him by his mother. Afterwards she let him have a note for about $300, which he used as collateral to obtain money at one of the banks, and later she seems to have advanced about $150 more. Soon after Clinton engaged in this business his mother removed to Falls City and she and her family seems to have drawn largely for the means of support from the store of her son. The son kept enlarging his stock so that by July 1st of that year it was worth $2,500.

The defendant in error claims to have loaned his brother about $650 between July 4th and August 25th of that year, while the stock in the store during this period seems to have been very much increased, and on September 24, 1888, was worth about $6,500. The great increase in the stock and in the debts may have come from the inexperience of Clinton, and the ease with which persons believed to be honest can obtain credit; or the increase may have been made from a design of Clinton and others to defraud his creditors. This is a question of fact to be determined by a jury.

On September 24, 1888, Clinton seems to have exhausted his credit and creditors were pressing for their claims, whereupon about September 24, 1888, he executed a note for $1,924.80 and two chattel mortgages to his brother, the defendant, upon "the stock of goods, merchandise, and fixtures situated in what is commonly known as Postoffice store in Falls City, Nebraska, the said stock of goods consisting of groceries, confectioneries, cigars and tobacco, queensware, hardware, cutlery, toys, holiday goods, showcases, the soda fount and fixtures, books and papers, stationery, the awning and store, and all the goods, mer-

chandise, and fixtures of every kind and character situate in said store-room and cellar," etc. The defendant claims to have purchased the claims of his mother and sister against Clinton and to have given his own notes for the same, and that said claims together with his own amount to the sum secured by the mortgage. Certain creditors of Clinton for the goods in question recovered judgments against him, and caused executions to be issued thereon, which were placed in the hands of the plaintiff in error, who levied upon the stock of goods and sold a sufficient amount to satisfy said executions.

This action is brought against the officer for the wrongful conversion of the goods by reason of said sales.

On the trial of the cause the jury returned a verdict for the defendant, upon which judgment was rendered.

The court instructed the jury as follows :

"You are further instructed, as a matter of law, that a debtor in failing circumstances has a right to prefer one creditor to another and to pay one creditor with goods obtained on credit from another creditor, and in this case, if you believe from the evidence that Clinton Benner was lawfully indebted to Charles Benner as claimed, and that Clinton Benner, finding that he could not pay all his debts, transferred the goods in controversy to Charles Benner, and gave Charles Benner full and complete possession of the same under the chattel mortgages introduced in evidence, then upon this question of Charles Benner's rights to the property as against Thompson, defendant, you should find for the plaintiff Charles Benner, in this case, unless you believe from the evidence that there is fraud in these transactions participated in by Charles Benner or of which said Charles Benner had due notice. If these transactions are shown to you by the evidence to be in good faith, and Charles Benner had full and complete possession of the property for the purpose of paying his debt, then Thompson, the defendant, had no right to take the property from

him, and you should find in favor of this plaintiff, the amount of his damages not however to exceed the full sum of the debt due Charles Benner, and interest.

" That in order to prove the good faith of the notes and mortgages held by Charles Benner, it is not necessary for him to do more than show the honesty and good faith character of the transactions by the evidence of himself and the other witnesses, and circumstances, and notes, checks, drafts, and papers that have been introduced in evidence to you, and if you believe from the evidence that all the transactions were honest and in good faith on the part of Charles Benner, you should so find in your verdict. For a creditor violates no rule of law when he takes payment of his debt, though he knows that other creditors are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims.

" That the two chattel mortgages introduced in evidence in this case, if you believe from the evidence in this case were made and received in good faith on the part of Charles Benner, mortgagee, then it is sufficient to invest him, Charles Benner, with the right to take the property therein described, and to have the same turned over to him by Clinton Benner, mortgagor, and to retain the said property for the purpose of selling it as provided in the mortgages, for the purpose of satisfying his claim with the proceeds of the sale of said property. Then you are instructed that no one had any right to take the goods from the possession of Charles Benner without first paying off his claims, and if it was so done, the party who thus took the goods from him are liable in damages, for the damages done Charles Benner by so doing, to the extent of his lien with the interest thereon.

" The jury are further instructed that the law presumes that all persons transact their business honestly and in good faith until the contrary appears from a preponderance of the evidence, and the burden of proving fraud is always on

Thompson v. Benner.

the party alleging the fraud, and you are instructed that all persons are presumed to be innocent of intentional wrong until they are proved to be guilty, and all persons are presumed to transact their business in good faith and for a lawful purpose, and when an act can as well be attributed to an honest intent and purpose as to a corrupt or unlawful one, then the jury are bound to attribute the act to an honest intent and to a lawful purpose.

"INSTRUCTIONS ASKED FOR ON BEHALF OF DEFENDANT.

"If the jury believe from the evidence that the plaintiff got possession of the goods in question from his brother while in a failing condition, and when he was known to be insolvent and largely in debt, and that such possession was taken under chattel mortgages upon all the property of the mortgagor, and for a sum larger than that owing from Clinton F. Benner to his brother, the plaintiff, and said plaintiff knew that the goods so mortgaged were not paid for, all these circumstances may be taken into consideration by the jury in determining whether the plaintiff was a *bona fide* mortgagee of the goods.

"If the jury find from the evidence that said mortgages were given in fact to secure debts owing from Clinton F. Benner to his mother and sister, in addition to what he was owing to his brother, the plaintiff, then you are instructed that said mortgages create a trust in favor of said mother and sister, and as such must be held to be an assignment for the benefit of creditors, and, not being in conformity with the act relating to voluntary assignments, must be held to be void, and the plaintiff cannot recover.

"CHARGE OF THE COURT.

"GENTLEMEN OF THE JURY: This is an action brought by the plaintiff for the recovery of damages against the defendant, as an officer, for an alleged taking and conversion by him of certain goods and property of the plaintiff.

"2. The gist of this action is, first, the ownership of said

property by the plaintiff, and, secondly, the unlawful taking of the same by 'the defendant.

" 3. The jury in arriving at your verdict have a right to take into consideration all the circumstances surrounding the case as adduced before you by the evidence.

" 4. In making up your verdict you are instructed by the court that brothers and other members of a family have a right to do business with each other, and such business is just as lawful as if the same business was done with any other person, but the court further instructs you that when the rights of other parties, not members of the family, are prejudiced by such. transaction, then, and in that case, it is your duty to scrutinize such acts closely, for the purpose of ascertaining the good faith of the transaction.

" 5. The court further instructs you that in arriving at a conclusion as to the amount due this plaintiff from Clinton F. Benner you should examine the transaction between plaintiff and his mother and sister, and if you shall find from a preponderance of · the evidence that prior to the time that the chattel mortgage was given to this plaintiff by his brother, this plaintiff purchased said claims from his mother and sister, and became wholly and absolutely responsible to them for the payment of said claims, then the amount of plaintiff's claim in this action is the combined amounts of his own claim, and also the amounts that had heretofore belonged to the sister and the mother; but if the jury shall find from the evidence that this plaintiff, prior to the time that he took the mortgages mentioned in this case, had not so purchased the claims of the mother and sister, and become absolutely responsible to them for the same, then, and in that case, the court instructs you that the claims of the mother and sister were not the property of this plaintiff.

" 6. The court instructs you that if you shall find from a preponderance of the evidence that the goods claimed by the plaintiff to have been taken by the defendant were so

taken by him, and if you shall further find from the evidence that the said goods and property so taken were the property of and in possession of the plaintiff, then the amount of plaintiff's damage is the amount of his claim and interest, provided such claim does not exceed the value of the goods taken by the defendant.

"7. The court also instructs you that if you shall find from the evidence that the goods and chattels claimed in his, plaintiff's, petition to have been taken by the defendant were not the property of the plaintiff or that the defendant did not take the same, then your verdict should be for the defendant."

These instructions do not submit the question of fraudulent intent. Undue importance is given to the right of a debtor to prefer his creditors, and the important questions involved in the case are entirely lost sight of. Such instructions could not fail to confuse a jury and evidently did so in this case. We do not care to particularize the various defects and errors therein, which are apparent from a mere inspection.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.